Cory S. Fein
California Bar No. 250758
Cory Fein Law Firm
712 Main St., #800
Houston, TX  77002
Telephone:  (281) 254-7717
Facsimile:  (530) 748-0601
Email:  cory@coryfeinlaw.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| **DENNIS and VICTORIA BAKER, husband and wife, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED**<br>Plaintiffs,<br><br>v.<br><br>**FARMERS GROUP, INC., FARMERS INSURANCE EXCHANGE, AND MID-CENTURY INSURANCE COMPANY**<br><br>Defendant. | Case No. 2:17-cv-6125<br><br>**PLAINTIFFS' ORIGINAL COMPLAINT**<br><br>**CLASS ACTION** |

Dennis and Victoria Baker, husband and wife ("Baker" or "Plaintiffs"), file this Original Class Action Complaint against Defendants Farmers Group, Inc., Farmers Insurance Exchange, and Mid-Century Insurance Company (collectively, "Farmers"), on behalf of themselves and all others similarly situated, and in support state as follows:

**PARTIES**

1. Plaintiffs Dennis and Victoria Baker, husband and wife, were at all times mentioned herein residents of Gila County, Arizona.

2. Defendant, Farmers Group, Inc., is an insurance company incorporated in Nevada, with its principal place of business and headquarters at 6301 Owensmouth Ave, Woodland Hills, Los Angeles County, California 91367. Its registered agent for service is Doren E. Hohl, 6301 Owensmouth Ave, Woodland Hills, CA 91367.

1

3. Defendant, Farmers Insurance Exchange is an insurance company incorporated in Nevada, with its principal place of business and headquarters at 6301 Owensmouth Ave, Woodland Hills, Los Angeles County, California 91367. Its registered agent for service is Doren E. Hohl, 6301 Owensmouth Ave, Woodland Hills, CA 91367.

4. Defendant, Mid-Century Insurance Company, is an insurance company incorporated in California, with its principal place of business and headquarters at 6301 Owensmouth Ave, Woodland Hills, Los Angeles County, California 91367. Its registered agent for service is Doren E. Hohl, 6301 Owensmouth Ave, Woodland Hills, CA 91367. It has been a wholly owned and controlled subsidiary of Farmers Group since 1950 and is controlled and operated by Farmers Group, Inc., and or Farmers Insurance Exchange.

5. Defendants provide property and casualty insurance, including homeowners' policies and business policies, throughout the country, including in Arizona.

**JURISDICTION**

6. This Court has jurisdiction over the subject matter of this action. Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), jurisdiction exists because the proposed plaintiff class (i) has at least 100 putative class members (ii) asserts an aggregate amount in controversy in excess of $5,000,000 and (iii) includes class members whose citizenship is diverse from that of Defendants. 28 U.S.C. §§ 1332(d)(2), (d)(5). The Court also has jurisdiction under 28 U.S.C. § 1332(a) because the controversy is between citizens of different states and the matter in controversy exceeds $75,000.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in California and Defendants reside in this District.

**BACKGROUND**

8. Farmers markets and issues business and homeowners insurance policies in Arizona.

9. Farmers' business and homeowners insurance policies issued to Arizona residents all contain substantially the same provisions with respect to the settlement of losses.

2

10. Pursuant to Arizona law, the insurance policies at issue in this litigation were required to conform, as to all provisions and the sequence thereof, with the basic policy commonly known as the New York standard fire policy, edition of 1943, designated as the Arizona standard fire policy, as maintained by the Director of the Arizona Department of Insurance. Any provisions in Defendant's insurance policies that provided lesser coverage than the Arizona standard fire policy are not enforceable.

11. Under the terms of the Policies, Farmers insures its Arizona policyholders for, among other things, loss under Coverages A and B to the insured's structures on the business or residence premises (collectively, "Building Property").

12. As to losses to Building Property, the insured may disregard a recovery on a replacement cost ("RCV") basis and make claim on an actual cash value ("ACV") basis.

## ACTUAL CASH VALUE RECOVERIES

13. This case involves claims by Plaintiffs and other similarly situated Arizona insureds who received ACV payments for loss to Building Property under the Policies, either because they (a) made only an ACV claim, or (b) received an ACV payment for a loss and did not thereafter receive an RCV payment for that loss.

14. The Arizona Amendatory Endorsement, a part of all Arizona homeowners policies, , defines ACV to mean:

> … the amount it would currently cost to repair or replace covered property with new material of like kind and quality, ***less allowance for physical deterioration and depreciation, including obsolescence***.   (emphasis added).

15. Under Arizona law, such an ACV payment to an insured must include all costs "likely required" to be incurred in repairing or replacing the loss, even if the insured decides not to repair or replace the loss. *Tritschler v. Allstate Ins. Co.,* 213 Ariz. 505, 144 P.3d 519 (Ct. App. 2006).

16. In *Tritschler*, the Arizona Court of Appeals ruled that ACV payments must include all costs likely to be incurred to repair or replace the loss whether or not the insured actually incurred such costs. In *Lukes v. American Family Mutual Ins. Co.*, No. 04-2022-PHX-JAT, 455 F. Supp. 2d 1010 (D. Ariz. 2006), the Honorable James A. Teilborg also defined actual cash value to include all

3

costs likely to be incurred to repair or replace the loss whether or not the insured actually incurred such costs.

17. Farmers has adopted a company-wide practice of applying depreciation to both materials and labor ("the Farmers Arizona Depreciation Practice"). This conflicts with the plain language of the above-quoted language because while materials can deteriorate, depreciate and become obsolete, labor cannot.

18. Materials are logically depreciable because as they age they lose value due to wear and tear. Labor, on the other hand, is not logically depreciable because it does not lose value due to wear and tear, nor does it lose value over time. The depreciation of materials is calculated as the actual age of the materials divided by their useful life.

19. For example, a 10-year old cabinet with an expected life of 50 years would be depreciated 20% (10/50); a 10-year old mirror with an expected life of 40 years would be depreciated 25% (10/40); and a 10-year old roof ridge cap with expected life of 25 years would be depreciated 40% (10/25). The logic behind these calculations is that when you lost a 10-year old cabinet that had an expected life of 50 years, the actual cash value the insurance company should pay you is only 80% of the cabinet's value, because you already enjoyed 20% of the cabinet's life when it was destroyed in the fire, and thus it should be depreciated 20%.

20. Insurance companies use statistical tables to estimate the expected life of various items and delineate how they lose value over time. By contrast, there are no such statistical tables for labor because labor logically does not lose value over time and the idea of depreciating the value of labor is illogical.

21. Indemnity is the basis and foundation of all insurance law and the objective of indemnity is to put the insured in as good a condition, as far as practicable, as he would have been if the loss had not occurred, that is to reimburse the insured for the loss sustained, no more, no less.

22. Allowing an insurance company to apply depreciation to labor leaves the insured with a significant out-of-pocket loss that is inconsistent with the principle of indemnity. Accordingly, labor is not depreciable.

23. Plaintiff believes that this result is clear from the language of the insurance policy and Arizona law. However, if the term "actual cash value" is ambiguous, it must be construed liberally in favor of the insured, and thus the cost of labor cannot be depreciated when determining the actual cash value of a covered loss under an indemnity insurance policy that does not define the term.

24. As confirmed by Farmers' estimate in the Plaintiffs' claim and the admissions of Farmers' claim adjusters, the Farmers Arizona Depreciation Practice is common company practice, and not mere oversight or the work of rogue adjusters.

25. Farmers' implementation of its company-wide practice (which it knows is based on an incorrect, unreasonable, and bad faith interpretation of the relevant coverage provision in its insurance policy) has led to a systematic practice of undervaluing ACV claims, and a systematic practice of paying its insureds who recover on an ACV basis less than the amount to which they are entitled.

## PLAINTIFFS' FACTS

26. On November 19, 2015, Mid-Century Insurance Company (a subsidiary of Farmers Group, Inc.) issued a Commercial Apartment Owners Insurance Policy to Plaintiffs, Policy Number 60624-58-70, covering a four-plex they owned in Gila County, Arizona. The policy was issued with a letter from Bryan Murphy, President of Business Insurance, Farmers Group, Inc., thanking Mr. Baker for making Farmers his insurer of choice. The named insureds were Dennis Baker and his wife Victoria Baker. The policy had a limit of $421,000 and a deductible of $10,000.

27. On November 5, 2016, a major explosion and fire caused extensive damage to Plaintiffs' insured property.

28. Plaintiffs promptly submitted their claim of loss to Farmers on November 7, 2016. Farmers accepted coverage for the loss.

29. In calculating the ACV of Plaintiffs' loss, Farmers used the Xactimate program.

30. The Xactimate program has various settings that determine how a claim is adjusted. For example, it can be set to apply depreciation to material costs only, or it can be set to apply depreciation to both labor and materials.

31. Farmers improperly requires that Xactimate be set to depreciate both labor and materials when used to adjust property damage claims in Arizona. In other states, Farmers properly requires that Xactimate be set to apply depreciation only to materials.

32. By applying depreciation to the costs of material and labor, Farmers underpays its inureds in Arizona who only recover on an ACV (actual cash value) basis.

33. The amount of underpayment can be calculated by changing the Xactimate settings on each class member's estimate to apply depreciation only to materials, which would generate the correct amount that each class member should be paid.

34. Farmers' underpayment of Plaintiffs' claims by depreciating both materials and labor was not a mistake or an oversight, but rather was the deliberate implementation of Farmers' standard practice of depreciating both labor and materials in Arizona. This implementation was done by mandating that the adjustment of Arizona property claims must be done with the Xactimate software set to depreciate both labor and materials.

35. When Plaintiffs' representative brought the issue to the attention of Farmers, Farmers' representative (General Adjuster, Dan Gil), sent a June 5, 2017 email stating, "I have checked with the AZ [Arizona] claims office and the confirm that we depreciation [sic] the entire line item, including labor, in the ACV calculation."

36. On June 16, Gil confirmed this position, emailing: "I know in California and Arkansas we only depreciate materials, but in all the other states we depreciate the entire line item, including labor, in the ACV calculation."

37. On June 22, Gil confirmed the position a third time, emailing: "I am not trying to be difficult, I am simply following the Farmers Insurance guidelines for the State of Arizona.

38. On July 5, Gil confirmed the position a fourth time, emailing that Farmers' "position is that we depreciate both labor and materials to determine the ACV."

39. Pursuant to the Farmers Arizona Depreciation Practice, Farmers failed to pay Baker the "actual cash value" of his loss as required under the Policy and Arizona law.

40. Farmers has taken the position that it will continue to underpay its Arizona insureds in this manner, until a court forces it to stop.

6

## CLASS ACTION ALLEGATIONS

41. Pursuant to L.R. 23-2.1, Plaintiffs bring this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

42. **Class Definition**. Pursuant to L.R. 23-2.2(a), Plaintiffs seek certification of a Class, defined as follows:

> All owners of property located in Arizona, who, during the six years prior to the filing of this Complaint, (a) received an actual cash value payment for a covered loss to structures under a Farmers business or homeowners insurance policy based on an estimate that applies depreciation to both material and labor costs, and (b) did not receive a replacement coverage payment for that depreciation.

43. **Class Size / Numerosity.** Pursuant to L.R. 23-2.2(b), and Rule 23(a)(1), the size of the class is unknown, but Plaintiffs approximate that there are several thousand members of the class. The members of each Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed and believe that the Farmers Arizona Depreciation Practice has been applied to thousands of claims. The identity and precise number of Class members, though unknown to Plaintiffs, is reasonably and objectively ascertainable from Farmers' own records.

44. **Adequacy of Representation.** Pursuant to L.R. 23-2.2(c), and Rule 23(a)(4), Plaintiffs will fairly and adequately protect the interests of the members of each Class. Plaintiffs have retained counsel experienced in consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously on behalf of other similarly situated Farmers insureds. Plaintiffs have no interests adverse or antagonistic to those of the proposed Classes.

45. **Commonality of Questions of Law and Fact.** Pursuant to L.R. 23-2.2(d), and Rule 23(a)(2), this action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, (a) whether Farmers is contractually authorized to calculate actual cash value by

applying depreciation to labor as well as to materials, (b) whether Farmers adopted a company practice of applying depreciation to labor as well as to materials, (c) whether Farmers improperly withheld costs from ACV payments through this practice, (d) whether Plaintiffs and the other Class members are entitled to appropriate equitable remedies, including declaratory and injunctive relief requiring Farmers to reopen and properly adjust their loss claims; and (e) whether Plaintiffs and the Class are entitled to monetary damages

46. **Typicality.** Pursuant to L.R. 23-2.2(e), and Rule 23(a)(3), Plaintiffs' claims are typical of the claims of the members of each Class because, *inter alia*, all Class members were injured through Farmers' uniform misconduct under the Farmers Arizona Depreciation Practice described above in the same manner as Plaintiffs were.

47. **Predominance of Common Issues and Superiority.** Pursuant to L.R. 23-2.2(f), and Rule 23(b)(3), questions of law and fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to all other available means for the fair and efficient adjudication of this controversy. The focus of this litigation will be on the common issues identified above. The only individual issues will be with regard to damages and these will be minor and capable of undisputed objective calculation as a ministerial matter based on Defendants' documents. A class action would be superior because the damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Farmers. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain cost-effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, it would be an unnecessary and inefficient burden on the court system. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here

48. **Nature of Notice.** Pursuant to L.R. 23-2.2(g), Plaintiffs propose notifying class members by first class mail, using the class members' mailing addresses listed in the Defendants' records, updated via the National Change of Address database by an experienced neutral third-party class action administration company.

49. **Ascertainability**. The members of each class are ascertainable by application of objective criteria and by reference to Defendants' records. Each time Defendants pay an insurance claim, they calculate the payment amount with an itemized accounting of each repair or replacement item, often with a computer program like Xactimate. Defendant's records will reflect when depreciation was applied to labor, and when its insureds did not recover that withheld depreciation.

50. **Certification under Rule 23(b)(2).** The Classes may be certified under Rule 23(b)(2) because Farmers has acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of each Class as a whole. Plaintiffs seek permanent injunctive and equitable relief on behalf of both Classes, on grounds generally applicable to the entire Class, to enjoin and prevent Farmers from engaging in the systematic misconduct described above, and requiring it to provide full equitable relief to Plaintiff and Class members (which would include, among other things, requiring Farmers to reopen and correctly adjust claims closed within the Class Period). Unless a Class-wide injunction is issued, Farmers will continue to commit the violations alleged, and the members of the Class and other Farmers policyholders will continue to be injured. Plaintiffs are adequate representatives for the injunctive and declaratory relief because they remain Farmers insureds and are subject to underpayment by the Farmers Arizona Depreciation Practice in the future.

## COUNT ONE
## (BREACH OF CONTRACT)

51. Plaintiffs and the Class repeat and reallege all allegations contained in the paragraphs above as if set forth separately in this Claim for Relief.

52. Under Arizona law, an insurance policy's provisions must be construed "according to their plain and ordinary meaning.'" *Tritschler*, 213 Ariz. 505, ¶ 12, 144 P.3d 519, 525 (App.2006), quoting *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). But

9

"[t]he language used in an insurance contract must be viewed from the standpoint of the average layman who is untrained in the law or the field of insurance." *American Family* v. *Liristis*, 204 Ariz. 140, ¶ 13, 61 P.3d at 25–26.

53. Under the Policy, Farmers was obligated to make the ACV payment in the "the amount it would currently cost to repair or replace covered property…."

54. Farmers breached the express terms of the Policy contract when, pursuant to the Farmers Arizona Depreciation Practice, it failed to make full ACV payments to Plaintiffs and the other Class members as a result of applying depreciation to the cost of labor.

55. Farmers also breached the implied covenant of good faith and fair dealing. "In Arizona, insurance contracts include an implied covenant of 'good faith and fair dealing,' whereby each party is 'bound to refrain from any action which would impair the benefits which the other had the right to expect from the contract or the contractual relationship.'" *Voland v. Farmers Ins. Co.*, 189 Ariz. 448, 451, 943 P.2d 808, 811 (App.1997) (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986)).

56. In cases (such as this) involving first-party coverage, the insurer must "play fairly with its insured." *Rowland v. Great States Ins. Co.*, 199 Ariz. 577, 20 P.3d 1158 (Ct. App., 2001) (citing *Rawlings*, 151 Ariz. at 154, 726 P.2d at 570). The insurer must "give equal consideration in handling the claim, and do so in fairness and honesty." *Id.*

57. The duty of good faith also includes an obligation to inform the insured about the extent of coverage and his or her rights under the policy and to do so in a way that is not misleading. This *See Nardelli v. Metropolitan Group Property and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (Ct. App., 2012) (citing, *inter alia*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156–57, 726 P.2d 565, 572–73 (1986); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 729 P.2d 267, 275–77 (1987) (internal quotation omitted) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy")).

58. Farmers breached this implied duty by improperly underpaying its insureds by the application of the Farmers Arizona Depreciation Practice described above.

59. Plaintiffs and the other members of the Class were injured by Farmers' breaches, in an

amount to be proved at trial.

60. This matter arises out of contract, such that Plaintiffs and the Class are eligible for and entitled to an award of their attorneys' fees under A.R.S. § 12-134.0.

**COUNT TWO**
**(DECLARATORY AND INJUNCTIVE RELIEF)**

61. Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

62. An actual controversy has arisen and now exists between Plaintiffs and the members of the Class, on the one hand, and Farmers, on the other hand, as to the propriety of Farmers' interpretation of the Policy contract.

63. Under the circumstances, Plaintiffs and the members of the Class are entitled to a declaration that the Policy does not permit Farmers to apply depreciation to the cost of labor, and providing for appropriate equitable relief to Plaintiff and other members of the Class injured by Farmers' misconduct.

64. The appropriate equitable remedy may include, among other things, ordering a self-audit to determine exactly how many Arizona insureds were underpaid or not paid for appropriate ACV damages on their claims.

**PRAYER**

WHEREFORE, Plaintiffs pray for a judgment:

A. Certifying the Class as requested herein;

B. Awarding Plaintiffs and the Class members declaratory, injunctive or other equitable relief;

C. Awarding Plaintiffs and Class members compensatory damages in an amount to be determined at trial;

D. Awarding Plaintiffs and Class members attorneys' fees and costs; and

E. Providing Plaintiffs and Class members with such further and other relief as deemed just and proper by the Court.

11

**JURY DEMAND**

Plaintiffs demand a jury trial of all issues triable by right by jury.

Dated: August 18, 2017.

                        */s/ Cory S. Fein*
                        Cory S. Fein
                        California Bar No. 250758
                        Cory Fein Law Firm
                        712 Main St., #800
                        Houston, TX  77002
                        Telephone:  (281) 254-7717
                        Facsimile:  (530) 748-0601
                        Email:  cory@coryfeinlaw.com

                        Attorneys for Plaintiffs