Cory S. Fein (pro hac vice)
Cory Fein Law Firm
712 Main St., #800
Houston, TX 77002
Telephone: (281) 254-7717
Facsimile: (530) 748-0601
Email: cory@coryfeinlaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis Baker, et al. | ) Case No. 2:17-cv-03901-PHX-JJT |
| Plaintiffs, | ) |
| | ) **PLAINTIFFS' UNOPPOSED** |
| v. | ) **MOTION FOR CERTIFICATION** |
| | ) **OF SETTLEMENT CLASS,** |
| Farmers Group, Inc., et al. | ) **PRELIMINARY APPROVAL OF** |
| | ) **CLASS-ACTION SETTLEMENT,** |
| Defendants. | ) **AND APPROVAL OF FORM AND** |
| | ) **MANNER OF NOTICE** |

The Parties respectfully move the Court, under Federal Rules of Civil Procedure 23(b) and (e), to (1) certify the Settlement class, (2) preliminarily approve the class-action settlement agreement; and (3) approve the form and manner of notice to the class. The grounds for the motion are set forth in the accompanying memoranda of law in support.

The parties are available for a hearing on this motion on April 2, 3, 4, 8, 9, 10, 11 or 12, 2019.

Dated: February 14, 2019.

*/s/ Cory S. Fein*
Cory S. Fein (pro hac vice)
Cory Fein Law Firm
712 Main St., #800
Houston, TX 77002
Telephone: (281) 254-7717
Facsimile: (530) 748-0601
Email: cory@coryfeinlaw.com

1

Robert D. Ryan
(Arizona Bar # 014639)
Law Offices of Robert D. Ryan, PLLC
343 W. Roosevelt St., Suite 220
Phoenix, AZ 85003
rob@robertdryan.com
(602) 256-2333 (phone)
(602) 256-2334 (fax)

*Attorneys for Plaintiffs*

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendants on February 14, 2019, and he confirmed that Defendants are not opposed to this motion.

/s/ Cory S. Fein
Cory S. Fein

Cory S. Fein (pro hac vice)
Cory Fein Law Firm
712 Main St., #800
Houston, TX 77002
Telephone: (281) 254-7717
Facsimile: (530) 748-0601
Email: cory@coryfeinlaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis Baker, et al. | ) Case No. 2:17-cv-03901-PHX-JJT |
| | ) |
| Plaintiffs, | ) **PLAINTIFFS' MEMORANDUM** |
| | ) **OF LAW IN SUPPORT OF** |
| v. | ) **MOTION FOR CERTIFICATION** |
| | ) **OF SETTLEMENT CLASS,** |
| Farmers Group, Inc., et al. | ) **PRELIMINARY APPROVAL OF** |
| | ) **CLASS-ACTION SETTLEMENT,** |
| Defendants. | ) **AND APPROVAL OF FORM AND** |
| | ) **MANNER OF NOTICE** |

## I.    INTRODUCTION

Plaintiffs filed this case in August 2017, alleging that they were underpaid on their commercial property insurance claim because Farmers improperly applied depreciation to some labor costs, rather than only applying depreciation to material costs. Plaintiffs contended that the labor component of an actual cash value payment is not depreciable and thus insurance companies should not apply depreciation to such estimated labor costs when calculating actual cash value payments. Plaintiffs filed suit on behalf of themselves and a class of Arizona insureds who received actual cash value payments calculated in a similar manner.

After conducting formal and informal discovery and engaging in extensive negotiation (including through an experienced mediator), the parties have now agreed to resolve the litigation. The proposed Settlement Agreement includes a notice program to notify class members of the settlement, and allows class members to file claims to recover significant cash benefits. Under the agreement, each class member who qualifies is entitled

1

to 50% of the estimated amount of labor depreciation applied to the class member's actual cash value payment. The estimated average amount of withheld labor depreciation per class member is more than $4,000. In order to receive payment, a class member need only submit a straightforward claim form, by mail or electronically, to a neutral claims administrator. The settlement also includes an appeal process for class members who disagree with their payment amounts, and an audit process to ensure that the settlement is administered fairly.

Plaintiffs' Counsel estimate that unpaid withheld labor depreciation totaling approximately $488,000 in cash benefits are available for class members to claim. Administrative costs — to be paid separately by Defendants — in implementing the notice program, and processing claims, are estimated at an additional amount totaling approximately $64,000. Attorneys' fees of $112,500 and costs not to exceed $8,000, which the Defendants will also pay separately under the Settlement, and which will not reduce benefits payable to class members, bring the total gross minimum value of the Settlement to $672,500.

The proposed Settlement warrants judicial approval. Under Federal Rule of Civil Procedure 23(e), any proposed class action settlement requires court approval, and notice must be directed in a reasonable manner to all class members bound by the settlement. Fed. R. Civ. P. 23(e)(1)(A) and (B). In implementing Rule 23(e), courts typically follow a two-step procedure: (1) preliminary approval of the settlement terms, certification of the settlement class, and approval of the notice plan, followed by (2) a final hearing on the fairness, reasonableness, and adequacy of the settlement. *See, e.g., Murillo v. Pacific Gas & Elec. Co*., 266 F.R.D. 468, 473 (E.D. Cal. 2010) ("Procedurally, the approval of a class action settlement takes place in two stages. In the first stage of the approval process, 'the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given to the Class.'") (quoting *West v. Circle K Stores, Inc*., No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) (quoting *In re Phenylpropanolamine (PPA) Prods. Liab. Litig*., 227 F.R.D. 553, 556 (W.D.

Wash. 2004))). Where, as here, "the case is presented for both class certification and settlement approval, the certification hearing and the preliminary fairness evaluation can usually be combined." MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2006). This two-step procedure was recognized in the Rule 23 amendments that became effective on December 1, 2018.[1]

Accordingly, the Parties seek certification of the Settlement class, preliminary approval of the Settlement, and authorization of notice to the class.

## II.    PROCEDURAL HISTORY

Plaintiffs Dennis and Victoria Baker had a commercial insurance policy with Mid-Century covering a fourplex apartment building located in Payson, Arizona. On November 5, 2016, a major explosion and fire caused extensive damage to the building. Plaintiffs chose not to repair or rebuild the property. Pursuant to their insurance policy with Mid-Century, they were entitled to receive the actual cash value of their property, which is commonly calculated as the replacement cost minus depreciation. Mid-Century took the position that depreciation applied to certain costs of materials and labor. Plaintiffs contend that depreciation should only be applied to the cost of materials, and filed a class action lawsuit in the Central District of California on August 18, 2017, seeking to recover the depreciation applied to labor costs for Plaintiffs and others similarly situated with insured property in Arizona. Defendants contended that venue should be transferred to the District

---

[1] "As amended, Rule 23(e)(1) provides that the court must direct notice to the class regarding a proposed class-action settlement only after determining that the prospect of class certification and approval of the proposed settlement justifies giving notice. This decision has been called 'preliminary approval' of the proposed class certification in Rule 23(b)(3) actions. It is common to send notice to the class simultaneously under both Rule 23(e)(1) [regarding settlement] and Rule 23(c)(2)(B) [regarding class certification], including a provision for class members to decide by a certain date whether to opt out. This amendment recognizes the propriety of this combined notice practice." Advisory Committee Notes on 2018 Amendment to Rule 23(c)(2).

Court of Arizona. Plaintiffs decided not to contest the motion to transfer venue, and the case was transferred to this Court in October of 2017.

One of the primary legal issues in the case is whether Defendants are entitled to depreciate the labor component of actual cash value payments.

The parties exchanged mandatory discovery responses during November and December of 2017, and negotiated a proposed case management order and protective order. They attended a Scheduling Conference on January 23, 2018. During the first half of 2018, the parties served and responded to each other's written discovery requests related to the key merits issue, produced a privilege log, produced voluminous documents, and conferred and resolved discovery issues.

In June of 2018, Defendants deposed Mr. and Mrs. Baker, and also deposed Josh Scott, the Public Adjuster hired by the Bakers to assist with their claim. Conversations between counsel after the depositions suggested that a mediation might be appropriate at that point of the litigation. The parties exchanged additional information and scheduled mediation with Arizona mediator, Mark Worischeck.

Mr. Worischeck coordinated significant pre-mediation negotiations to resolve several issues. On November 27, 2018, the parties attended a full-day mediation with Mr. Worischeck in Phoenix. During the first phase of the negotiation, the parties were able to successfully negotiate all key settlement terms other than attorneys' fees and the class representative service award. After this agreement was reached, the parties began negotiating attorneys' fees and the class representative award in the second phase of the negotiation. At the end of the day, the parties and counsel signed a term sheet, which included an agreement to draft a detailed settlement agreement in accordance with the term sheet. Following the mediation, the parties drafted and began negotiating a formal settlement agreement. The settlement agreement was finalized and signed on February 5, 2019.

### III.    SETTLEMENT TERMS

The full Stipulation of Settlement is attached hereto as Exhibit 1. It provides that notice of the settlement will be provided to all class members by a Third-Party Administrator (Rust Consulting), explaining the lawsuit, the settlement, the relief provided by the settlement, and the class members' rights under the settlement. It also requires that the Administrator establish a settlement website and a toll-free phone number.

Class members who received a Qualifying ACV Payment[2] and who did not recover all of the Previously-Withheld Labor Depreciation will be entitled to file a claim for benefits, either by mail or through the settlement website. Class members filing claims will receive 50% of the Unpaid Labor Amount.  The Unpaid Labor Amount is defined as 34.15% of the total depreciation dollar amount that was withheld from the actual cash value payment(s) and never paid to the Class Member, as reflected in the Insurer's claim file for that Class Member's Insurance Claim.

The Settlement provides a Neutral Evaluator to decide disputes and an audit process to ensure that claims are properly paid. It allows Class Counsel to apply for a fee award not to exceed $112,500.00, reimbursement of costs and expenses not to exceed $8,000.00, and (iii) service awards for the Class Representatives in a total amount not to exceed $10,000.00 ($5,000.00 each).

### IV.    PRELIMINARY APPROVAL

Plaintiffs request that the Court, in conjunction with preliminary approval of the Settlement:

(1)    appoint Dennis Baker and Victoria Baker as Class Representatives;

(2)    appoint Cory Fein and Robert D. Ryan as Settlement Class Counsel;

(3)    provisionally certify the class under Rules 23(b)(3) and 23(e), and preliminarily approve the Settlement for purposes of issuing notice to class members;

---

[2]  Capitalized terms used herein (e.g., "Qualifying ACV Payment") are defined in the Stipulation of Settlement attached hereto as Exhibit 1.

(4)     schedule the fairness hearing, opt-out deadline, objection deadline, claim deadline, and any other related dates and deadlines for inclusion in the notice; and

(5)     approve the form and content of the notice, and notice program.

## V.     FINAL APPROVAL

After the notice program is completed and all class members have had an opportunity to object, Plaintiffs will move for final approval of the settlement, an award of attorneys' fees and costs, and a service award to the class representatives, to be determined after a final approval hearing.

## VI.    VALUE OF THE SETTLEMENT

The approximate value of the settlement was calculated based on (i) estimated amounts of unpaid withheld labor depreciation and (ii) the estimated number of claims eligible for payments. It is estimated that the average withheld labor depreciation amount is $4,013 per class member, which at the 50% settlement amount would result in an estimated average claim of $2,006.50 per class member with claims in which all withheld labor depreciation is unpaid. Based on estimations, there are approximately 216 claims in which all withheld labor depreciation is unpaid. At $2,006.50 per claim, the estimated total of these claims is $433,404. Further, it is estimated that an additional 72 class members received partial payment of withheld depreciation, with an estimated remaining unpaid withheld labor depreciation amount totaling 38% of the average withheld labor depreciation amount of $4,013. Accordingly, these claims are estimated to be worth an average of $762.47 per class member (38% of $4,013, multiplied by the 50% settlement amount). Based on estimations, there are approximately 72 claims in which class members received partial payment of withheld depreciation. Accordingly, these claims have an estimated total value of $54,897.84. Thus, the total estimated value of the claims of the estimated number of approximately 288 class members who are eligible for payments under the settlement is more than $488,000.00. This estimated amount does not include the additional value of notice and class administration (estimated at $64,000), and requested

6

attorneys' fees ("$112,500") and costs (estimated at $8,000). Including these amounts yields a total value of $672,500.00.

## VII.   CONSIDERATIONS AT PRELIMINARY APPROVAL STAGE

Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement— may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). A court may approve a class settlement only after notice in a reasonable manner is given to class members who will be bound by the settlement – notice that informs them of their right to object or exclude themselves from the class – and only after a subsequent hearing and finding that the settlement is "fair, reasonable and adequate." *Id*. To meet the dual requirements of notice and a hearing, the approval process typically proceeds in two steps: first, the court decides whether to preliminarily approve the settlement, conditionally certify the settlement class, and notify class members of the pending settlement and their right to participate in a final fairness hearing; second, the court holds a fairness hearing, which can occur only after notice to class members of their right to participate in the hearing or to opt out of the class altogether. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH §§21.632-33 (Fed. Jud. Ctr. 2004) ("MCL"). The purpose of the preliminary-approval stage is therefore to determine whether to proceed with full consideration of the settlement, not whether to approve the settlement. "The Court reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." MCL §13.14. "The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id*. at §21.632; see also 4 NEWBERG ON CLASS ACTIONS §11:25 (4th ed. 2011) ("[t]he court must preliminarily determine whether notice of the proposed settlement pursuant to Rule 23(e) should be given to class members . . . and an evidentiary hearing scheduled to determine the fairness and adequacy of the settlement").

7

At preliminary approval, the Court first determines whether a class exists. *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026. The Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See generally*, 3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed. 2002) § 11.25. "Whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

The law favors the compromise and settlement of class action suits. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon* at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989). Thus, the Court must determine whether a settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1).

To make this determination at preliminary approval, the Court may consider some or all of the following factors: the extent of discovery completed, and the stage of proceedings; the strength of the Plaintiff's case and the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; and the experience and views of counsel. *See Stanton*, 327 F.3d at 959. "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom.*

*Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (*citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

## VIII.   THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

### A.   The Settlement class satisfies the four prerequisites for certification under Rule 23(a).

Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class"). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. In *Amchem*, the United States Supreme Court explained: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

### 1.   Numerosity is satisfied.

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In ruling on a class action, a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings and an appellate court will generally defer to the district court's determination that the class is sufficiently numerous as to make joinder impractical." *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1997). The class here includes approximately 1,200 potential class members, with an estimation of at least several hundred claims that are eligible for payments under the terms of the settlement. Accordingly, numerosity is satisfied. "While there is no strict number requirement for

numerosity, courts have routinely held that classes comprised of more than forty members will satisfy this prerequisite." *Martinez v. Knight Transp., Inc.*, No. 1:16-cv-01730-DAD-SKO, 2018 U.S. Dist. LEXIS 204462, at *5 (E.D. Cal. Nov. 30, 2018); *See also Ikonen v. Hartz Mt. Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough."); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) ("Generally, 40 or more members will satisfy the numerosity requirement.").

### 2.    Commonality is satisfied.

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "[C]ommonality exists when there is a common question, that will produce a common answer, and the answer is crucial to the class members' claims." *Iontchev v. AAA Cab Serv.*, No. CV-12-00256, 2014 U.S. Dist. LEXIS 200152, at *6 (D. Ariz. Mar. 26, 2014) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011)). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Id.* (citing *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)).

The common question here is whether the Defendants are entitled to apply depreciation to labor costs in connection with actual cash value payments.

### 3.    Typicality is satisfied.

Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1102, 1124 (9th Cir. 2010) (internal quotation marks and citation omitted). Typicality does not require the claims to be "substantially identical." *Id.* The typicality requirement "requires only that the representative's claims are

reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

Typicality is satisfied here where the class representatives' claims and the class members' claims arise directly out of the Defendants' practice of depreciating estimated labor costs when paying class members' property loss claims.

### 4.    Adequacy of representation is satisfied.

Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determining whether representation is adequate requires the court to consider two questions: '(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Sali v. Corona Reg'l Med. Ctr.*, No. 15-56460, 2018 U.S. App. LEXIS 33250, at *21-22 (9th Cir. Nov. 27, 2018) (citing *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). *See also Drimmer v. WD-40 Co.*, 343 Fed. App'x 219, 221 (9th Cir. 2009); *Mix v. Asurion Ins. Servs.*, No. CV-14-02357-PHX-GMS, 2016 U.S. Dist. LEXIS 172874, at *34 (D. Ariz. Dec. 14, 2016); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011); and *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, there is no suggestion that the Plaintiffs' interests are in any way antagonistic to those of the class members. Indeed, the Plaintiffs' interests and the class members' interests are aligned. There is no conflict of interest, and the Plaintiffs and their counsel will vigorously prosecute this action.

The adequacy requirement is met here as Plaintiffs have represented the other class members vigorously. They each prepared for and endured lengthy depositions, worked with their counsel to respond to written discovery, consulted with counsel during the course of litigation regarding strategy, and Mr. Baker personally attended the mediation of this case in Phoenix, requiring extensive travel, and consulted with Plaintiffs' counsel

throughout the process of finalizing the settlement agreement and associated documents. (Fein Decl. ¶53.)

The firms representing Plaintiffs also satisfy the Rule 23(a)(4) adequacy-of-counsel requirement. Cory Fein is an experienced class action attorney who has successfully litigated multiple class actions (including class actions against insurance companies) by way of contested motion and by settlement, in multiple jurisdictions. (Fein Decl. ¶¶3-21.) He has successfully certified classes over defendants' opposition; defeated interlocutory appeals of class certification; obtained a judgment on the merits in favor of a certified class; and has negotiated multiple class action settlements which were finally approved on behalf of hundreds of thousands of class members. Rob Ryan has an extensive background in pursuing claims against insurance companies in Arizona. Class Counsel vigilantly safeguarded the interests of the class by thoroughly investigating the claims, devoting considerable resources in preparing this case for mediation, and then settling the claims for valuable consideration despite the serious challenges described below.

**B.    The Class satisfies the predominance and superiority requirements of Rule 23(b)(3).**

**1.    Predominance is satisfied.**

Rule 23(b)(3) provides that the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2018 U.S. Dist. LEXIS 198909, at *24 (N.D. Cal. Nov. 21, 2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member . . . ." *Id.* (internal quotation marks omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member

to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id*. (internal quotation marks omitted).

Common questions of law and fact predominate over individual questions, satisfying the first component of the Rule 23(b)(3) inquiry, where "the issues in the class action subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Carlin v. DairyAmerica, Inc*., No. 1:09-CV-0430 AWI-EPG, 2018 U.S. Dist. LEXIS 157365, at *12-13 (E.D. Cal. Sep. 14, 2018) (citing *Ortega v. J.B. Hunt Transport, Inc*., 258 F.R.D. 361, 366 (C.D. Cal. 2009). "In evaluating predominance, courts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Id.* "The requirement is satisfied if a plaintiff establishes that a "common nucleus of facts and potential legal remedies dominates the litigation." *Id. (citing Hanlon*, 150 F.3d at 1022). Common issues can predominate "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Vazquez v. Kraft Heinz Foods Co.*, No. 16-cv-2749, 2018 U.S. Dist. LEXIS 173784, at *9 (S.D. Cal. Oct. 9, 2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

In the present case, the focus is on whether applying depreciation to labor costs in connection with actual cash value payments is permissible under Arizona law and the pertinent insurance policies. This common question of law predominates over any individual questions.

### 2.     Superiority is satisfied.

Finally, the proposed settlement class satisfies Rule 23(b)(3)'s superiority requirement. The factors relevant to the inquiry include: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims

in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b). The Ninth Circuit has explained that the "superiority requirement[ ] [was] added to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Wells Fargo Home Mortgage*, 571 F.3d 953, 958 (9th Cir. 2009) (internal quotation marks and citation omitted).

In this case, class members have demonstrated no interest in individually controlling the prosecution of separate actions (Factor A), and there is no litigation concerning the controversy already begun by class members (Factor B). Concentrating the litigation of the claims in the District of Arizona is desirable (Factor C) because the claims are limited to commercial insurance claims related to Arizona property. Factor D, relating to manageability, is not applicable because this is a settlement class. "In the context of a proposed settlement class, questions regarding the manageability of the case for trial are not considered." *Allen v. Similasan Corp.*, No. 12-cv-00376-BAS-JLB, 2017 U.S. Dist. LEXIS 56333, at *8 (S.D. Cal. Apr. 12, 2017); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

## IX.   THE COURT SHOULD APPOINT CORY FEIN AND ROB RYAN AS CLASS COUNSEL

Rule 23 provides that a "court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g)(1). In appointing class counsel, the court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id*. As described above, in

the section applying the Rule 23(a)(4) "adequacy of representation" prerequisite, each of these factors support the appointment of Fein and Ryan as class counsel.

Plaintiffs' counsel have sufficiently identified and investigated the claims in this action. (Fein Decl. ¶¶46-55.) Cory Fein is an experienced class action attorney who has successfully litigated multiple class actions (including class actions against insurance companies) by way of contested motion and by settlement, in multiple jurisdictions. *Id*. He has successfully certified classes over defendants' opposition; defeated interlocutory appeals of class certification; obtained a judgment on the merits in favor of a certified class; and has negotiated multiple class action settlements which were finally approved on behalf of hundreds of thousands of class members. (Fein Decl. ¶¶3-21.) Rob Ryan has an extensive background in pursuing claims against insurance companies in Arizona. Class Counsel vigilantly safeguarded the interests of the class by thoroughly investigating the claims, devoting considerable resources in preparing this case for mediation, and then settling the claims for valuable consideration despite the serious challenges in this case.

## X.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

There is an "overriding public interest in settling and quieting litigation" and "[t]he Ninth Circuit is firmly committed to the rule that the law favors and encourages compromise settlements." *Camacho v. City of St. Louis*, 359 Fed. App'x 794, 796 (9th Cir. 2009) (quoting *Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1998)). Indeed, the federal policy "to promote settlement" is "particularly true in class action suits." *In re The Exxon Valdez*, 229 F.3d 790, 795 (9th Cir. 2000).

"The Ninth Circuit has identified nearly a dozen factors that district courts usually consider before approving a class action settlement that is reached prior to class certification." *In re Volkswagen "Clean Diesel" Mktg., Sales Practice, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2018 U.S. Dist. LEXIS 201681, at *13-14 (N.D. Cal. Nov. 28, 2018). "It can be more effective to consider these factors after notice of the settlement has been sent to the class members and they have had the opportunity to object or opt out."

*Id.* "At the preliminary approval stage, then, district courts in this circuit often consider a separate set of factors, which better reflect that the review at this stage is only an initial evaluation of the settlement's fairness." *Id.* "These preliminary-approval factors examine whether the settlement (1) appears to be the product of serious, informed, and noncollusive negotiations, (2) has any obvious deficiencies, (3) improperly grants preferential treatment to class representatives or segments of the class, and (4) provides class members with an award that falls within the range of possible approval." *Id. See also Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2018 U.S. Dist. LEXIS 165669, at *14 (N.D. Cal. Sep. 26, 2018); *Cruz v. Sky Chefs, Inc.*, No. 12-02705, 2014 U.S. Dist. LEXIS 68560, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014); and *In re Tableware Antitrust Litig.*, 484 F. Supp.2d 1078, 1079 (N.D. Cal. Apr. 12, 2007) (identifying these factors).

These factors are discussed below.

### A.   Settlement is the product of serious, informed, and noncollusive negotiations

This first factor concerns "the means by which the parties arrived at settlement." *Wilson v. Tesla*, 2018 U.S. Dist. LEXIS 165669, at *14. For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Id.* The Court should consider "the strengths and weaknesses of the parties' claims and defenses, determine the appropriate membership of the class, and consider how class members will benefit from settlement" in order to determine if it is fair and adequate. *Id.* at **14-15. "The use of a mediator and the presence of discovery "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement." *Id. at *15.*

Here, during discovery, Plaintiffs obtained information regarding Defendants' practices regarding applying depreciation to the costs of labor and materials when adjusting property claims. Additionally, Plaintiffs' counsel utilized their experience (and the experience of their attorney and public adjuster colleagues) litigating and negotiating insurance claims with Defendants and other insurance companies. (Fein Decl. ¶46).

Defendants also served written discovery relating to the merits of Plaintiffs' claims and took their depositions and the deposition of Plaintiffs' public adjuster. Additionally, after formal discovery, the parties informally exchanged information and documents over a period of several months, which culminated in a lengthy mediation with an experienced mediator on November 27, 2018. At the mediation, the parties arrived at a signed settlement term sheet, and continued to work together after the mediation to draft and negotiate the formal Settlement Agreement. (*Id.* at ¶51.) Because the settlement was the product of serious, informed, non-collusive negotiations with an experienced mediator, the first factor weighs in favor of preliminary approval.

### B.    Settlement has no obvious deficiencies

Because the Settlement has no obvious deficiencies, the second favor also weighs in favor of preliminary approval.

### C.    Settlement does not give preferential treatment to class representatives or segments of the class

The Settlement treats the class representatives and all members of the class the same, with no preferential treatment. Each class member is entitled to file a claim for 50% of the class member's Previously-Withheld Labor Depreciation, which is calculated by a formula that is the same for all class members, and thus provides a claim amount that is proportional to each class member's alleged damages. The settlement provides no preferential treatment to the named Plaintiffs, other than to allow them to each apply for a $5,000 service award, which is the standard amount in the Ninth Circuit and has been found not to constitute improper preferential treatment. *See Wilson v. Tesla, Inc.*, No. 17-cv-03763, 2018 U.S. Dist. LEXIS 165669, at *18 (N.D. Cal. Sep. 26, 2018) (citing multiple Ninth Circuit cases that approved class representative payments of $5,000 each, and finding that they did not constitute preferential treatment.) Accordingly, the third factor weighs in favor of preliminary approval.

**D.    Settlement provides class members with an award that falls within the range of possible approval.**

The Settlement provides class members with 50% of their Estimated Labor Depreciation Amount. The agreed-upon percentage was the result of lengthy back-and-forth negotiation over a period of months, including with the involvement of the mediator, leading up to an all-day mediation. (Fein Decl. ¶¶ 52).

Plaintiffs and their counsel eventually agreed to settle for a 50% recovery due primary to the following factors: (1) the hurdles Plaintiffs would have to overcome in certifying a litigation class; (2) the lack of Arizona statutory or case law on the key issue in the case, and the fact that the majority position taken by courts throughout the country favored Defendants; and (3) the delay and uncertainty associated with continuing to litigate rather than settle. (*Id*. at ¶53.)

The parties briefed and argued their positions on class certification and the merits, including (1) in their pleadings, (2) in their discussion of the case in their Joint Proposed Case Management Plan, (3) in written discovery, (4) during the depositions, (5) in telephone conversations and emails, (6) in their detailed mediation brief, response, and reply, and (7) during the mediation. (*Id*. at ¶54.)

Defendants made clear that they would vigorously contest class certification, including the issue of whether a litigation class was certifiable. Additionally, Defendants argued that they would prevail on the merits. (*Id*. at ¶55.)

The parties both recognized the potential uncertainty regarding the resolution of the primary legal issue in the case—whether insurers can apply depreciation to labor costs when calculating ACV payments under Arizona law. Plaintiffs argued that this Court should, and would, follow the minority position, prohibiting the depreciation of labor costs. *See Adams v. Cameron Mut. Ins. Co*., 2013 Ark. 475, 430 S.W.3d 675 (Nov. 21, 2013), *Bailey v. State Farm Fire & Cas. Co*., No. 14-53-HRW, 2015 WL 1401640 (E.D. Ky. Mar. 25, 2015); *Lains v. Am. Family Mut. Ins. Co*., No. C14-1982, 2016 U.S. Dist. LEXIS 119879 at **6-7 (W.D.Wash. Feb. 9, 2016); *Arnold v. State Farm Fire & Cas. Co*.,

268 F. Supp. 3d 1297, 1312 (S.D. Ala. 2017); and *Hicks v. State Farm Fire & Cas. Co.*, No. 18-5104, 2018 WL 4961391 (6th Cir. Oct. 15, 2018). (*Id*. at ¶56.)

Defendants contended that the Court should, and would, follow the majority position, permitting the depreciation of labor costs. Defendants cited multiple cases in support of their position, including *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017, 1021 (Okla. 2002); *Graves v. Amer. Family Mut. Ins. Co.*, 686 F. App'x 536, 540 (10th Cir. 2017); *Riggins v. Am. Family Mut. Ins. Co.*, 281 F. Supp. 3d 785, 789 (W.D. Mo. 2017); *Basham v. United Servs. Automobile Ass'n*, No. 16-cv-03057-RBJ, 2017 WL 3217768, *4 (D. Colo. July 28, 2017); *Ware v. Metro. Property and Cas. Ins. Co.*, 220 F. Supp. 3d 1288, 1291 (M.D. Ala. 2016); *Papurello v. State Farm Fire & Cas. Ins. Co.*, 144 F. Supp. 3d 746, 770-71 (W.D. Penn. 2015); and *Henn v. Am. Fam. Mut. Ins. Co.*, 894 N.W.2d 179, 190 (Neb. 2017). (*Id*. at ¶57.)

The parties zealously and thoroughly briefed and argued their positions throughout the mediation process, analyzing the cases from other jurisdictions ruling on the issue, but recognized that neither could predict with certainty how the Court would rule. Plaintiffs and their counsel believe the negotiated settlement represents a fair compromise in light of the uncertainty in Arizona law and the split in authority in other jurisdictions. (*Id*. at ¶58.)

The Settlement was reached after sufficient discovery and research to fully assess the strengths and weaknesses of the claims, and after arm's-length negotiations and mediation. The proposed Settlement has no deficiencies, is within the range of reasonableness for this case, and gives no preferential treatment to the named Plaintiffs or any other part of the class. Additionally, the proposed attorneys' fees are reasonable, falling squarely within this Circuit's fee-award parameters.

## XI.   PREVIEW OF FINAL APPROVAL FACTORS

When the Court is called upon to decide whether to grant final approval to the settlement, it will apply the factors listed in the version of Rule 23(e)(2) that became effective on December 1, 2018. Rule 23(e)(2) was amended to standardize the list of factors to consider when approving a class action settlement.

> The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern. . . The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.

Advisory Committee Notes (2018) to FED. R. CIV. P. 23. "A lengthy list of factors can take on an independent life, potentially distracting attention from the central concerns that inform the settlement-review process." *Id*. "This amendment therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id*. Although the Court is only making an initial determination at the preliminary approval stage, the Court may wish to consider the factors that it will evaluate in context with deciding final approval. The rule for final approval states: "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:…." FED. R. CIV. P. 23(e)(2). The factors set forth by Rule 23(e)(2)(A – D) are set forth and applied below:

**"(A) the class representatives and class counsel have adequately represented the class"**

As described above in the analysis of Rule 23(a)(4), Plaintiffs and Class Counsel have adequately represented the class.

**"(B) the proposal was negotiated at arm's length"**

As described in above, the parties negotiated the proposed settlement at arm's length, through an experienced neutral mediator.

**"(C) the relief provided for the class is adequate, taking into account:"**

   **"(i) the costs, risks, and delay of trial and appeal;"**

As described above, Plaintiffs faced the risk that this Court would follow the majority position taken by courts throughout the country, rather than the minority position

advocated by Plaintifffs, and find that Arizona law permitted Defendants to apply depreciation to labor costs when calculating actual cash value. Additionally, Plaintiffs faced the risk that a litigation class would not be certified, and the costs and delays inherent in all complex litigation. Plaintiffs and Class Counsel believed that the relief (of approximately half the estimated underpayment) is adequate taking into account these risks.

> **"(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;"**

The Settlement provides an effective method of distributing relief to the class and processing claims, including permitting class members to submit their claims by mail or through the settlement website, a simplified claim form that does not require unnecessary information, and a prompt cash payment to class members with valid claims.

> **"(iii) the terms of any proposed award of attorney's fees, including timing of payment; and"**

As described herein, Class Counsel have no guarantee of any set amount of attorney's fees. The Court will award a fee which it, in its discretion, finds to be appropriate. In conjunction with moving for final approval Plaintiffs will request a modest fee that is less than Class Counsel's total lodestar and less than the benchmark of 25% of the settlement's value. The fee will not be paid until the Settlement obtains final approval, ensuring that class members will be paid.

> **"(iv) any agreement required to be identified under Rule 23(e)(3)"**

Rule 23(e)(3) requires identification of any agreement made in connection with the proposed settlement. The only such agreements are the settlement agreement itself, and the term sheet signed at the conclusion of the mediation, which was the basis for the settlement agreement.

**"(D)   the proposal treats class members equitably relative to each other."**

The proposed settlement treats each class member equitably relative to each other, in that it entitles each of them to file a claim that is based on the estimated amount of unpaid labor depreciation applied to their claim. In other words, a class member who had $20,000 in estimated unpaid labor depreciation on his property loss claim will be entitled to twice as much as a class member with $10,000 in estimated unpaid labor depreciation on his claim, subject to applicable limits of policy coverage.

## XII.   ATTORNEYS' FEES AND EXPENSES

If the Court grants preliminary approval, at the final approval hearing Class Counsel will seek an award of attorneys' fees in the amount of $112,500 and reimbursement of expenses in the amount of $8,000, as compensation for services provided and expenses advanced for the Settlement class. In the Ninth Circuit, "[t]wo methods are available for determining attorneys' fees in 'common-fund' cases: (1) the percentage method and (2) the lodestar method." *Shaffer v. Cont'l Cas. Co.*, 362 Fed. App'x 627, 631 (9th Cir. 2010). *See also Reid v. I.C. Sys.*, No. CV-12-02661-PHX-ROS, 2018 U.S. Dist. LEXIS 125663, at *11-12 (D. Ariz. July 26, 2018) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)). Indeed, the district court "exercise[s] . . . broad discretion" to determine and calculate a reasonable attorneys' fee. *See Yeagley v. Wells Fargo & Co.*, 365 Fed. App'x 886, 887 (9th Cir. 2010) (citing *Hanlon*, 150 F.3d at 1029). The district court "has discretion to use either a percentage or lodestar method." *Hanlon*, 150 F.3d at 1029 (citation omitted).

Here, Plaintiffs' counsel's fee request can be justified under either method.

### 1.   Percentage-of-the-Fund Method

Under the percentage-of-the-fund approach, the agreed-to attorneys' fee request is reasonable as a matter of law. Under that approach, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the Defendants' separate payment of attorneys' fees and

expenses, and the expenses of administration. *See Boeing v. Gemert*, 444 U.S. 472, 479 (1980) ("Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery."). "When attorney's fees are calculated based upon the 'percentage-of-the-fund' method, the benchmark award is 25 percent of the recovery obtained, with 20-30% as the usual range." *Reid v. I.C. Sys.*, No. CV-12-02661-PHX-ROS, 2018 U.S. Dist. LEXIS 125663, at *11-12 (D. Ariz. July 26, 2018) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The parties estimate that unpaid withheld labor depreciation totaling approximately $488,000 in cash benefits are available for class members to claim. Adding the estimated cost of notice and class administration ($64,000), requested attorneys' fees ("$112,500") and costs (estimated at $8,000), yields a total value of $672,500.00.

The $112,500 fee requested would be 16.7% of the total of the total value. This percentage is below the standard 25% benchmark range endorsed by the Ninth Circuit. Even were the Court to exclude attorneys' fees from the total value of the settlement, bringing the total value down to $552,000.00, the requested fee of $112,500 would be 20.4% of the value, still well below the benchmark.

"Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id.* In doing so, "courts look to factors such as: (a) the results achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing *Vizcaino*, 290 F.3d at 1047).

When Plaintiffs move for final approval, they will demonstrate that Plaintiffs' counsel's efforts in this case, which involved a complex legal issue of first impression in Arizona, easily justify the modest fee award they seek, and could have justified an even higher award.

23

### 2.  Lodestar Method

A "lodestar" analysis confirms that the $112,500 fee award sought does not result in any windfall to class counsel; to the contrary, the lodestar multiplier in this litigation will be negative.

"Under the [lodestar] method, the district court 'multiplies a reasonable number of hours by a reasonable hourly rate' . . . There is a strong presumption that the lodestar is a reasonable fee." *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016) (citing *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 (9th Cir. 2002)). The number of hours can include projected future time for implementing the settlement. *In re Volkswagen "Clean Diesel" Mktg., Prods. Liab. Litig*., No. 17-16279, 2018 U.S. App. LEXIS 20420, at *8 (9th Cir. July 23, 2018) (holding that the "district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things, defend against appeals and assist in implementing the settlement").

Class Counsel's current total lodestar is $107,690, calculated using their reasonable number of hours devoted to the litigation and reasonable billing rates in effect at the time the work was performed. (Fein Decl at ¶64-77.) Class Counsel estimate that their lodestar will exceed the $112,500 requested after: (1) taking this case through preliminary and final approval; (2) working with Rust, the Class Administrator, and Defendants on implementing the notice plan and processing claims; (3) working with class members on evaluating any disputes regarding rejected claims and/or underpaid claims, and helping them understand the settlement and claim process; (4) working with the neutral to adjudicate any disputes; (5) auditing the claim administration process if necessary. (*Id*. at ¶62.) Accordingly, Plaintiffs will not be requesting a multiplier on their lodestar.

Finally, the requested fee-and-expense award – assessed against the value of the fund as a whole – is reasonable under the Ninth Circuit's analysis in *In Re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935 (9th Cir. 2011). In *Bluetooth*, the Ninth Circuit noted its concern "that the amount awarded was 83.2% of the total amount defendants

were willing to spend to settle the case, viewing the $800,000 allotment for attorneys' fees, the $12,000 allotment for an service award, the $100,000 cy pres award, and the $50,000 allotment for [costs] as a 'constructive common fund.'" *Id.* at 945. The appeals court concluded "that the district court needed to do more to assure itself – and [the appeals court] – that the amount awarded was not unreasonably excessive in light of the results achieved." *Id.* at 943.

Here, by contrast, the requested fee-and-expense award is 16.7% of the estimated fund. And of course, unlike *Bluetooth*, where there were "zero dollars for economic injury," *id.* at 938, under the proposed settlement there are substantial cash benefits available for class members to claim, with the parties estimating the average class member being entitled to more than $2,000.

## XIII.  THE COURT SHOULD APPROVE THE MANNER AND FORM OF NOTICE.

Rule 23 requires only the "best notice that is *practicable under the circumstances*, including individual notice to all members who can be identified through *reasonable effort*." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128-29 (9th Cir. 2017) (citing FED. R. CIV. P. 23(c)(2)(B) (emphasis in original).

The proposed manner of notice easily satisfies the requirements of Rule 23(c)(2). Because the class members are all insureds of the Defendant insurers who have recently filed and been paid on insurance claims, Defendants have their current mailing addresses and will provide them to the Settlement Administrator, who will mail notices to the class members via first class U.S. mail. (Settlement at ¶33.) The Settlement Administrator will use its standard practices to ensure the notice is mailed to any class member that has moved. (*Id.* at ¶35.) Additionally, the Settlement Administrator will establish a website and a toll-free telephone number to reach the Settlement Administrator's offices. (*Id.* at ¶36.)

The form of the proposed notice (attached as Exhibit 2 to the Settlement Agreement) is sufficient in that it meets all requirements of Rule 23(c)(2)(B). It clearly and

concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice includes a copy of the claim form (attached as Exhibit 3 to the Settlement Agreement), and it sufficiently describes the settlement. Notice provided pursuant to Rule 23(e) must "generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)). *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (citing *Lane* and *Rodriguez*, and noting that the most important components of a notice are that it states the amount of the settlement; the amount class counsel will seek in fees, expenses, and service awards; the fact that class members will need to submit a claim to obtain relief; an internet link and phone number to obtain a claim form; and the deadline for objecting or submitting a claim.).

## XIV.  CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court enter a Preliminary Approval Order in the form attached as Exhibit 1 to the Settlement Agreement, granting preliminary approval of the proposed settlement, appointing Class Counsel, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit 2 to the Settlement Agreement), and setting deadlines for objections and opt-outs, and a final approval hearing date. The final approval hearing should be on a date no sooner than 90 days after notice to government officials as required by CAFA. For the preceding reasons, the Court should certify the Settlement class, preliminarily approve the Settlement, and approve the form and manner of notice.

Dated: February 14, 2019.

/s/ Cory S. Fein
Cory S. Fein (pro hac vice)
Cory Fein Law Firm
712 Main St., #800
Houston, TX  77002
Telephone:  (281) 254-7717
Facsimile:  (530) 748-0601
Email:  cory@coryfeinlaw.com

Robert D. Ryan
(Arizona Bar # 014639)
Law Offices of Robert D. Ryan, PLLC
343 W. Roosevelt St., Suite 220
Phoenix, AZ 85003
rob@robertdryan.com
(602) 256-2333 (phone)
(602) 256-2334 (fax)

*Attorneys for Plaintiffs*